UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| THE LANE CONSTRUCTION CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 3:16-CV-624-HBG |
| HAYWARD BAKER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 22].

Now before the Court is the Defendant's Motion to Dismiss [Doc. 11]. The Plaintiff has responded in opposition [Doc. 19], and the Defendant filed a Reply [Doc. 20]. The Motion is now ripe for adjudication. Accordingly, for the reasons more fully explained below, the Defendant's Motion [**Doc. 11**] is **DENIED**.

### I. BACKGROUND

The Complaint in this matter was originally filed on October 24, 2016, [Doc. 1] and later amended [Doc. 10] on December 14, 2016. The First Amended Complaint ("Complaint") alleges that the Plaintiff entered into a construction contract with the United States Department of Transportation, Federal Highway Administration ("FHWA"), whereby the Plaintiff served as the general contractor and agreed to construct five bridges for a project known as the Foothills Parkway "Missing Link" Project ("Project"). [Doc. 10 at ¶ 5]. The Plaintiff entered into a Subcontract Agreement with the Defendant, whereby the Defendant would furnish and install

micropiles for the construction of the Project ("Work"). [*Id.* at ¶ 8].[1] In addition, the Complaint alleges that, as part of its Work, the Defendant agreed to provide micropile testing for the Project and provide temporary and permanent shoring for slope stability. [*Id.*].

The Complaint states that the construction of the modular block walls for the Project required the use of select backfill material for stability. [*Id.* at ¶ 9]. The Complaint states that as a cost-saving measure, the Plaintiff created this backfill material by screening and crushing material excavated from the Project site and that the Plaintiff's contract with FHWA was based on the Plaintiff being able to use the excavated material instead of purchasing imported stone materials to be used as the backfill. [*Id.* at ¶¶ 9, 11]. Further, the Complaint alleges that during the course of the Project and pursuant to the terms of the Subcontract Agreement, the Plaintiff directed the Defendant to perform its Work in accordance with certain progress schedules. [*Id.* at ¶ 16].

The Complaint alleges that the Defendant failed to commence and perform its Work in accordance with the Plaintiff's progress schedules, thereby breaching Articles 6 and 10 of the Subcontract Agreement. [*Id.* at ¶¶ 17-18]. In addition, the Complaint avers that the Defendant breached Article 23 of the Subcontract Agreement by failing "to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness, and diligence required hereunder." [*Id.* at ¶ 19]. The Complaint contends that pursuant to Article 23 of the Subcontract Agreement, if the Defendant "at any time" caused "stoppage or delay of or intervene with the Project work," such conduct constituted a breach/default of the Subcontract Agreement and that the Defendant

---

[1] The Complaint states that "micropiles" are deep foundation elements having a diameter in the range of three to ten inches that serve to stabilize weak soil within predicted shear zones. [Doc. 10 at ¶ 7]

agreed to be "responsible for any delays incurred as a direct result of [its] negligence." [*Id.* at ¶ 21]. The Complaint alleges that the Plaintiff provided verbal notice to the Defendant of its failure to timely perform the Work in accordance with the Subcontract progress schedules. [*Id.* at ¶ 23]. Further, the Complaint states that the Defendant was provided timely written notice of its breach, default, delay, and negligence. [*Id.* at ¶ 25]. Specifically, the Complaint references an email dated December 15, 2015, from Plaintiff's Assistant Project Engineer to the Defendant, which provides as follows:

> As you are aware, Hayward Baker was scheduled to remobilize to the Foothills Parkway Project the week of December 7, 2015, to begin drilling micropiles at Bridge 7 Abutment 1 on December 14, 2015. As of this morning, no equipment has been delivered to the site and no micropile work has been started at Bridge 7 Abutment 1. Failure to begin work immediately will impact our project schedule as micropile installation at Bridge 7 Abutment 1 lies on the critical path. Lane will expect to be compensated by Hayward for any additional costs associated with this impact.
>
> Please provide a date when you expect to begin your work at Bridge 7 Abutment 1.

[Doc. 10-3 at 1]. The Complaint states that notwithstanding Plaintiff's notice and written notice to the Defendant and over 30 days to cure the breach, default, delay, and negligence, the Defendant never cured the breach, default, delay, and negligence. [Doc. 10 at ¶ 27]. The Complaint states that the Defendant's failure to maintain its work schedule caused the following: (1) the construction was delayed into the unfavorable weather months requiring the Plaintiff to purchase imported stone material to be suitable for the excavated moisture-sensitive material; (2) the Plaintiff had to expedite construction to maintain its schedule for the Project; (3) the Plaintiff had to remove and haul away some of the backfill; and (4) the construction of a bridge was delayed, which resulted in additional time and labor costs. [*Id.* at ¶¶ 28-21]. Further, the Complaint alleges

3

that the Defendant breached the contract and committed negligence. [*Id.* at ¶¶ 35-51]. Finally, in the Complaint, the Plaintiff requests its attorney's fees in prosecuting this action. [*Id.* at 9].

## II. POSITIONS OF THE PARTIES

The Defendant moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (c), the Plaintiff's breach of contract claim and the requests for attorney's fees. For grounds, the Defendant argues that as indicated in paragraph 8 of the Complaint, the parties' relationship is governed by a written Subcontract Agreement. The Defendant argues that Section 23 of the Subcontract Agreement confers special rights and remedies upon the Plaintiff in the event the Defendant commits a default as defined in Section 23. Specifically, the Defendant states that the Plaintiff is only entitled to avail itself of the remedies outlined in Section 23 "after giving Subcontractor notice of default and seven (7) days (48) hours [sic] within which to cure." [Doc. 11 at 3]. The Defendant asserts that Section 23 makes clear that notice of default and opportunity to cure are condition precedents to the Plaintiff holding the Defendant liable for any damages resulting from a default under the Subcontract Agreement.

The Defendant continues that paragraph 24 of the Complaint suggests that the Plaintiff satisfied Section 23 of the Subcontract Agreement, but verbal notice that the Defendant is behind schedule is not akin to providing a notice of a default sufficient to allow the Plaintiff to avail itself the remedies afforded by Section 23 of the Subcontract Agreement. The Defendant asserts that such notice must give it warning that the Plaintiff will assert its rights under the contract if it failed to cure a default. The Defendant contends that paragraph 24 of the Complaint does not allege that the verbal notice provided to it conveyed the message that the Plaintiff was initiating steps necessary to assert its legal rights or that if the default was not cured, the Plaintiff would take final action as provided in the Subcontract Agreement. Further, the Defendant argues that the

allegations contained in paragraph 25 of the Complaint do not satisfy the requirements in Section 23 of the Subcontract Agreement. The Defendant continues that the referenced email does not convey the message that the Plaintiff is initiating the steps to assert its legal rights. Finally, the Defendant asserts that if the Plaintiff's breach of contract claim is dismissed, then there is no contractual, statutory, or other basis upon which the Plaintiff can recover its attorney's fees.

The Plaintiff responds [Doc. 19] that the Defendant's Motion to Dismiss does not meet the standards pursuant to Rule 12(b)(6). The Plaintiff argues that in the Complaint, it provided the Defendant with detailed and adequate notice of the grounds upon which its claims rest. Further, the Plaintiff asserts that it has specifically and factually pled all the requisite elements for its claims. The Plaintiff states that the Defendant does not complain about the absence of allegations supporting a cause of action but that the Defendant actually raises a perceived defense (lack of notice) and seeks dismissal on the grounds that its claimed defense negates the Plaintiff's Article 23 claim. Further, the Plaintiff argues that the Defendant's Motion is not supported by the facts or applicable law. The Plaintiff contends that it provided proper notice under Article 23 and that Article 23 does not state that the requisite notice must contain the word "default." The Plaintiff states that it sent an email notice to the Defendant and that its email can only be interpreted one way (*i.e.,* that the Defendant "had failed to perform a contractual duty and that it was responsible for 'delay of or interference with Project work'") [Doc. 19 at 7]. The Plaintiff submits that its email was proper notice of the default under Article 23.

In addition, the Plaintiff responds that its actions are consistent with Tennessee law. The Plaintiff asserts that in Tennessee, contractual obligations should be interpreted by reasonableness standards and that in the instant matter, the Plaintiff provided the Defendant the requisite notice of the default/breach and provided it well in excess of seven days to cure such breach/default.

5

Moreover, the Plaintiff avers that neither the Subcontract Agreement or Tennessee law requires that a notice of breach or default contain specific language to be valid. Finally, the Plaintiff argues that it has properly pled a cause of action for breach of contract under other provisions of the Subcontract Agreement.

The Defendant replies [Doc. 20] that its Motion is a proper vehicle for attacking the failure to comply with a necessary condition precedent to Plaintiff's claim. The Defendant argues that federal pleading standards require that a plaintiff plead the performance or occurrence of any conditions precedent to its claims and that the failure to do so is a fatal deficiency in its pleading. The Defendant submits that the Plaintiff has not properly pled satisfaction of the condition precedent in Section 23 of the Subcontract Agreement. The Defendant asserts that even with "Tennessee's supposedly lax standard, the Plaintiff's alleged verbal notices and the email are inadequate within the context of contractual notices." [Doc. 20 at 3]. The Defendant provides that the Plaintiff was required to give it adequate notice that it materially breached the contract and an opportunity to cure regardless of whether the Plaintiff's breach of contract claim arises under Section 23 of the Subcontract Agreement. The Defendant explains that Section 23 of the Subcontract Agreement makes clear that any breach is automatically an event of default subject to the requirements of Section 23 and that Tennessee common law requires parties in construction cases to provide notice of the default and the opportunity to cure it before pursing remedies. The Defendant asserts that if the Plaintiff failed to give adequate notice of default and an opportunity to cure, then it is contractually precluded from exercising any of the remedies provided in the Subcontract Agreement, including monetary damages and attorney's fees. Further, the Defendant asserts that the Plaintiff drafted the language in Section 23 and that it cannot now try to escape the impact of its own contract.

### III. STANDARD OF REVIEW

As an initial matter, the Defendant filed a Notice Regarding Motion to Dismiss [Doc. 28] stating that "the Court can treat the Motion to Dismiss as one for a judgment on the pleadings under Fed. R. Civ. P. 12(c)." [Doc. 28 at 1]. The Defendant explains that it filed its Answer to the First Amended Complaint and Counter-Claim [Doc. 26] out of necessity due to concerns over the statute of limitations on the Defendant's Miller Act claim.

The Court notes that Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998)).

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).

This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  ANALYSIS

With the above standard in mind, the Court turns to the Defendant's arguments. The Defendant moves to dismiss, arguing that paragraphs 24 and 25 of the Complaint do not allege that the verbal notice or email conveyed the message that the Plaintiff would initiate the steps necessary to assert its legal rights under Article 23 of the Subcontract Agreement.[2] Thus, the Defendant asserts that the Complaint fails to show that the Plaintiff satisfied the condition precedents with respect to its ability to seek contract damages for the alleged delay.

Federal Rule of Civil Procedure 9(c) provides that "it suffices to allege generally that all conditions have occurred or been performed." Within this Circuit, the general rule appears to be

---

[2] The Court notes that the Plaintiff uses the term "Article" to refer to the numbered paragraphs in the Subcontract Agreement, while the Defendant uses the term "Section". The Court will use the term "Article," which is consistent with the language in the Complaint.

that such conditions should be pleaded. *See Arch Wood Prot., Inc. v. Flamedxx, LLC*, 932 F. Supp. 2d 858, 870 (E.D. Tenn. 2013) (citing *Ginsburg v. Ins. Co. of N. Am.,* 427 F.2d 1318, 1321–22 (6th Cir. 1970)) (holding general averments of the occurrence or performance of conditions precedent are sufficient).

In the present matter, Article 23 of the Subcontract Agreement provides as follows:

> *Default*: Should Subcontractor at any time: (a) fail to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the work with skill, conformity, promptness, and diligence required hereunder, (b) cause stoppage or delay of or interference with the Project work, (c) become insolvent or (d) fail the performance or observance of any of the covenants, conditions or other terms of this Subcontract, then in any such event, each which shall constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor notice of default and seven (7) days[3] within which to cure, have the right to exercise any one or more of the following remedies . . .

[Doc. 10-1 at 6]. Thus, before exercising the remedies provided in Article 23, the Plaintiff must provide the Defendant notice of the default and seven days to cure.

The Complaint alleges that the Defendant breached the contract by not "commencing and performing Work in accordance the Project progress schedule" and failing "to supply the labor, materials, equipment, supervision, and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness, and diligence." [Doc. 10 at ¶¶ 18-19, 22]. Paragraph 23 of the Complaint states that the Plaintiff provided verbal notice to the Defendant of its "failure to timely commence Work and failure to timely perform Work in accordance with the Subcontract progress schedules." [*Id.* at ¶ 23]. Further, in Paragraph 25 of

---

[3] The Court notes that the Subcontract Agreement has the words "forty-eight" crossed out and someone has written "seven (7) days." In the instant filings, the timing of alleged notice is not at issue.

9

the Complaint, the Plaintiff alleges that it provided the Defendant with written notice of its breach, default, delay, and negligence in performing Work under the Subcontract Agreement. [*Id.* at ¶ 25]. The Plaintiff attached the written notice to the Complaint as Exhibit C. [Doc. 10-3]. Finally, in paragraph 27 of the Complaint, the Plaintiff alleges that notwithstanding "providing notice and written notice" to the Defendant "and over 30 days to cure the breach, default, delay, and negligence," the Defendant "never cured its breach, default, delay, and negligence resulting in significant delay and impairment of the progress of the Project work." [Doc. 10 at ¶ 27].

Accordingly, the Court finds that the Plaintiff has sufficiently alleged that (1) the Defendant breached the contract, (2) the Plaintiff provided notice of the alleged breach, and (3) the Plaintiff provided 30 days to cure the alleged breach, default, delay, and negligence.

It appears to the Court that the Defendant's real argument is that the alleged verbal notice and email were not legally sufficient, and therefore, Article 23 was not satisfied. *See* [Doc. 11 at 5] (arguing that the alleged verbal notice and email do not convey the message that the Plaintiff is initiating the steps to assert its legal rights) and [Doc. 20 at 1] (arguing that the Plaintiff failed to show that it has satisfied the condition precedent). As mentioned above, however, the Plaintiff has, at least, alleged that the condition precedents (*i.e.,* notice and seven days to cure the default) were satisfied prior to seeking remedies per the language of the Subcontract Agreement. *See* [Doc. 10 at ¶¶ 23, 25-27]. This is all that is required at this stage of the litigation where the Court is charged only with determining whether the Plaintiff has alleged sufficient facts to support a plausible claim. *See Thurman,* 484 F.3d at 859 (explaining that the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint); *Saintsbury Holdings, LLC v. RMC, LLC*, No. 1:06-CV-00014, 2006 WL 1900317, at *4 (M.D. Tenn. July 11, 2006) ("Rule 9(c) expressly allows general averment of

conditions precedent and though a more detailed statement may be desirable, a general averment that all conditions precedent have been fulfilled is sufficient to satisfy the pleading requirements.").

The Defendant urges the Court to adopt the reasoning of the case law that it cited in its Motion. The Court notes, however, that the cases cited in the Defendant's filings are procedurally different than the instant matter. *Sand Storage, LLC v. Trican Well Serv., L.P.*, No. 2:13-CV-303, 2014 WL 5460583, at *7 (S.D. Tex. Oct. 27, 2014), (recommending that summary judgment be granted because a condition precedent was not fulfilled), *Report and Recommendation adopted,* No. 2:13-CV-00303, 2014 WL 7205233 (S.D. Tex. Dec. 17, 2014); *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.,* 799 So. 2d 177, 185 (Ala. 2001) (defendant argued on appeal after a jury verdict that the plaintiff did not meet the condition precedents in the lease); *Moore v. Richfield Oil Corp.,* 377 P.2d 32, 33 (Or. 1962) (defendant appealed from a decree terminating the lease). Here, the Plaintiff has sufficiently alleged that the conditions precedent were fulfilled by providing the Defendant with notice of the breach, default, delay, and negligence and providing the Defendant over 30 days in which to cure.

Finally, because the Court declines to dismiss the breach of contract claim at this juncture, it also declines to dismiss the Plaintiff's request for attorney's fees.

V.     **CONCLUSION**

Accordingly, for the reasons stated herein, the Defendant's Motion to Dismiss [**Doc. 11**] is **DENIED.**

**IT IS SO ORDERED.**

ENTER:

_Bruce Guyton_
United States Magistrate Judge